FILED IN OPEN COURT

AUG -3 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CULLEN LATHAM ROBERTS,<br>a.k.a. "Pillpusher,"<br><br>*Defendant.* | Case No. 1:21-CR-164 |

## STATEMENT OF FACTS

The United States and the defendant, Cullen Latham Roberts, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From at least in and around April 2020 through October 2020, in the Eastern District of Virginia and elsewhere, the defendant, Cullen Latham Roberts, did knowingly, intentionally, and unlawfully distribute controlled substances—namely, oxycodone, oxymorphone, and dextroamphetamine-amphetamine (brand name Adderall), all Schedule II controlled substances—in violation of Title 21, United States Code, Section 841(a)(1).

2. During the course and in furtherance of these offenses, the defendant personally distributed the equivalent of at least 100 kilograms but not more than 400 kilograms of Converted Drug Weight.

3. At all times relevant to the criminal information, the defendant operated a vendor page on the darknet market Yellow Brick Market ("Yellow Brick"). The defendant used the moniker "Pillpusher" and, as the name would suggest, sold a variety of pharmaceutical pills. As

of approximately November 2020, the defendant advertised a 100% positive feedback rating from his buyers on Yellow Brick.

4. The defendant promoted the quality of the controlled substances he sold as "Pillpusher." For example, on September 30, 2020, "Pillpusher" had a Yellow Brick listing of Opana G74 oxymorphone 40-mg pills for sale for $90/pill. The description on the defendant's product listing page read in part, "This is the gold standard for any opiate. It is the closest you will get to heaven. Ask anyone out there and they know it."

5. The defendant primarily used the U.S. Postal Service to mail packages containing the pills that his customers purchased. He mailed the shipments using innocuous-sounding phony business names as return addresses to conceal the origin of the packages, including "Pro Computer," "Experimax," and "Simple Strands."

6. Beginning in July 2020, law enforcement began conducting undercover purchases of Schedule II controlled substances from the defendant's Yellow Brick vendor page. Each time, the defendant mailed the controlled substances from the state of Georgia, where he resided, to the Eastern District of Virginia. As set forth in the table below, on or about each of the following dates, the defendant distributed the following controlled substances to undercover law enforcement:

| Buy Date | Receipt Date | Drug Type | Quantity | Purchase Price (incl. Shipping) |
| --- | --- | --- | --- | --- |
| 7/3/2020 | 7/13/2020 | Oxymorphone Opana G74 40mg | 10 | $909 |
| 7/22/2020 | 7/27/2020 | Oxycodone 80mg | 10 | $509 |
| 7/30/2020 | 8/5/2020 | Adderall 25mg XR | 20 | $509 |
| 8/5/2020 | 8/6/2020 | Oxymorphone Opana G74 40mg | 10 | $909 |
| 8/16/2020 | 8/20/2020 | Adderall 20mg IR | 14 | $235 |

2

| 8/31/2020 | 9/8/2020 | Oxymorphone Opana G74 40mg | 10 | $909 |
| --- | --- | --- | --- | --- |
| 9/25/2020 | 10/1/2020 | Oxycodone 80mg | 20 | $1009 |
| 9/30/2020 | 10/8/2020 | Oxymorphone Opana G74 40mg | 10 | $918 |
| 10/5/2020 | 10/8/2020 | Oxycodone 80mg | 40 | $2010 |
| 10/13/2020 | 10/22/2020 | Oxycodone 80mg | 20 | $1010 |
| 10/20/2020 | 10/26/2020 | Oxycodone 80mg | 10 | $510 |
| 10/23/2020 | 10/29/2020 | Xanax 2mg | 10 | $50 |
| 10/28/2020 | 10/29/2020 | Oxymorphone Opana G74 40mg | 10 | $930 |

7. Specifically, as pertains to the criminal information,

a. Count 1: On or about August 5, 2020, the defendant distributed, or caused to be distributed, a quantity of dextroamphetamine-amphetamine (brand name Adderall), a Schedule II controlled substance, by causing it to be transported into the Eastern District of Virginia.

b. Count 2: On or about September 8, 2020, the defendant distributed, or caused to be distributed, a quantity of oxymorphone, a Schedule II controlled substance, by causing it to be transported into the Eastern District of Virginia.

c. Count 3: On or about October 8, 2020, the defendant distributed, or caused to be distributed, a quantity of oxycodone, a Schedule II controlled substance, by causing it to be transported into the Eastern District of Virginia.

8. Law enforcement searched the defendant's trash in October 2020 and found six empty boxes that had contained 2-mg alprazolam (brand name Xanax), which is a Schedule IV controlled substance. The labeling on the boxes was in Spanish and bore the name Kern Pharma, which is a generic drug manufacturer headquartered in Spain. Law enforcement also found two

3

empty boxes that had contained 80-mg oxycodone, which is a Schedule II controlled substance. The boxes were labeled "Oxicodone Sandoz 80 mg"; Sandoz is a generic drug manufacturer headquartered in Germany.

9. The FBI laboratory conducted analysis of packaging that was included with drug orders made from "Pillpusher." The analysis revealed that the defendant's fingerprints were present on at least some of the mailing envelopes, as well as at least some of the packaging materials included inside the envelopes, containing controlled substances.

10. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

11. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

12. If the defendant breaches the plea agreement, then pursuant to the plea agreement, she waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: _____
Katherine E. Rumbaugh
Assistant United States Attorney

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Cullen Latham Roberts, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: 8-3-21

_____
Cullen Latham Roberts
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 8.3.21

_____
Jay L. Strongwater, Esq.
*Pro Hac* Counsel for the Defendant

Date: 8/3/21

_____
Joni Robin, Esq.
Local Counsel for the Defendant

5