IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:21-CR-164 |
| CULLEN LATHAM ROBERTS, a.k.a. "Pillpusher," | The Hon. Leonie M. Brinkema |
| *Defendant*. | Sentencing: November 2, 2021 |

## <u>POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING</u>

The defendant, Cullen Roberts, who used the online moniker "Pillpusher," comes before the Court for sentencing after pleading guilty to three counts related to the distribution of prescription drugs on the Dark net.    The three-court criminal information filed in this case charges him with distribution of Adderall, oxymorphone, and oxycodone—all Schedule II controlled substances—in violation of Title 21, United States Code, Section 841(a)(1).

The United States has no objection to the Probation Officer's calculations of the defendant's United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), as set forth in the Presentence Investigation Report (PSR), (ECF No. 36), in Part D.

Further, the United States agrees that the defendant has accepted responsibility and assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   The Probation Officer has already accounted for the defendant's acceptance of responsibility.   PSR ¶ 37–38.

For the reasons set forth herein, the United States submits that a sentence of 42 months, the middle of the Guidelines range of 37–46 months, is appropriate in this case.

## BACKGROUND

In July 2020, investigators from the Federal Bureau of Investigation ("FBI") and the United States Postal Inspection Service ("USPIS") began investigating a darknet drug vendor operating under the name "Pillpusher" on the darknet market Yellow Brick.   Pillpusher had operated on Yellow Brick market since late April 2020; as of November, 2020, Pillpusher had a 100% positive feedback rating from their buyers on the market.

Pillpusher—who was subsequently identified as the defendant, Cullen Roberts—promoted the quality of the controlled substances he sold, and sometimes identified the legitimate pharmaceutical manufacturer from which the pills were sourced.   For example, the following listing was posted to Pillpusher's page in July 2020:

This is the gold standard for any opiate. It is the closest you will get to heaven. Ask anyone out there and they know it.

Oxymorphone is an opioid medication used to treat moderate to severe pain. Pill with imprint G74 is Orange and Round and has been identified as Oxymorphone Hydrochloride Extended-Release 40 mg. It is supplied by Amneal Pharmaceuticals LLC.

We have a small amount due to seeing if people are interested! So if you want to see more please buy!

Format your address as follows:

JANE DOE
1234 Street Name
(Apt or Suite Number)
City, State, ZIP

Please message us with ANY questions about our products and services. Thank you!

NOTE: If you choose to the use the tipping jar to save on shipping please make sure to tell us what you plan on ordering (or your order number).

Refer to our tipping jar for the discounted shipping: ?listing=94800449




The description on the product listing page reads in part, "This is the gold standard for any opiate. It is the closest you will get to heaven.    Ask anyone out there and they know it."

2

In July 2020, an FBI undercover employee ("UC") made three initial purchases of prescription pills from Pillpusher:

| Buy Date | Receipt Date | Drug Type | Quantity | Purchase Price (incl. Shipping) |
|----------|--------------|-----------|----------|---------------------------------|
| 7/3/2020 | 7/13/2020 | Oxymorphone Opana G74 40mg | 10 | $909 |
| 7/22/2020 | 7/27/2020 | Oxycodone 80mg | 10 | $509 |
| 7/30/2020 | 8/5/2020 | Adderall 25mg XR | 20 | $509 |

Each of the purchases were made using Bitcoin.   Each package was shipped to a covert address in the Eastern District of Virginia from Cumming, Georgia, via the U.S. Postal Service. The pills in each package were formally tested and found to be the controlled substance that each purported to be.   For the first purchase, the UC commented that the price was "steep" and asked the defendant if the oxymorphone was "crushable" (which would make it easier to snort).   The defendant responded:



Based on the sender addresses on the packages purchased in July, a US Postal Inspector conducted surveillance on the Post Office in Cumming, Georgia.   The next time the UC placed an order for pills from Pillpusher (10 oxymorphone 40-mg pills), the Postal Inspector observed a young white man with a slim build—later identified as the defendant—dropping off Priority Mail packages at the Cumming Post Office.   The packages that the PI observed the defendant drop off were addressed to recipients across the country.   One of the packages that the defendant dropped off was the package of oxymorphone addressed to the UC at the covert address in Virginia.

3

After investigators identified the defendant based on motor vehicle records, the UC conducted additional undercover purchases of narcotics from the defendant's darknet vendor page:

| Buy Date | Receipt Date | Drug Type | Quantity | Purchase Price (incl. Shipping) |
|----------|-------------|-----------|----------|--------------------------------|
| 8/16/2020 | 8/20/2020 | Adderall 20mg IR | 14 | $235 |
| 8/31/2020 | 9/8/2020 | Oxymorphone Opana G74 40mg | 10 | $909 |
| 9/25/2020 | 10/1/2020 | Oxycodone 80mg | 20 | $1009 |
| 9/30/2020 | 10/8/2020 | Oxymorphone Opana G74 40mg | 10 | $918 |
| 10/5/2020 | 10/8/2020 | Oxycodone 80mg | 40 | $2010 |
| 10/13/2020 | 10/22/2020 | Oxycodone 80mg | 20 | $1010 |
| 10/20/2020 | 10/26/2020 | Oxycodone 80mg | 10 | $510 |
| 10/23/2020 | 10/29/2020 | Xanax 2mg | 10 | $50 |
| 10/28/2020 | 10/29/2020 | Oxymorphone Opana G74 40mg | 10 | $930 |

As listed above, on September 25, October 5, and October 13, 2020, the UC placed orders with Pillpusher for 80-mg oxycodone pills.  Notably, on each occasion, the pills arrived in foil-covered blister-packs labeled "Oxicodone Sandoz 80 mg."  Additionally, on October 23, 2020, the UC placed an order with Pillpusher for 2-mg alprazolam tablets.  On this occasion, the pills arrived in foil-covered blister-packs labeled "Alprazolam Kern Pharma 2mg."  Sandoz and Kern Pharma are both generic pharmaceutical manufacturers; Sandoz is headquartered in Germany, and Kern is headquartered in Spain.

In October 2020, law enforcement searched the defendant's trash and found six empty boxes that had contained 2-mg alprazolam tablets.  The labeling on the boxes was in Spanish and

bore the name Kern Pharma.   Also found in the defendant's trash were two empty boxes that had contained 80-mg oxycodone.   The boxes were labeled "Oxicodone Sandoz 80-mg.".

The defendant was arrested in Georgia on December 2, 2020, on a criminal complaint and arrest warrant out of the Eastern District of Virginia.   He was transferred to a federal medical center for treatment and evaluation.   Following that, he was brought to the Eastern District of Virginia on July 16, 2021.   On August 3, 2021, the defendant waived indictment and pleaded guilty to the three counts of distribution referenced above.

For the reasons set forth below, the government submits that a sentence of approximately 42 months—roughly the middle of the advisory Guidelines range of 37–46 months—is sufficient but not greater than necessary to achieve the goals of sentencing in this case.

## SENTENCING ANALYSIS

### I.    Law

The Court consults both the Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence.   Although the Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005).   Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.   Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence."   *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.   18 U.S.C. § 3553(a)(2).   In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution.   18 U.S.C. § 3553(a).

## II.   Guidelines Calculation

With respect to the three counts of the criminal information, the Probation Officer has appropriately calculated a total offense level of 21 and criminal history category I for the defendant.   PSR ¶¶ 39, 43.   The base offense level based on drug quantity is 24, as stipulated in the defendant's plea agreement.   PSR ¶¶ 4, 29.   Two points are added to the offense level because the defendant distributed controlled substances through mass marketing by means of an interactive computer service.   PSR ¶ 30.   Two points are subtracted from the offense level because the defendant meets the criteria of U.S.S.G. § 5C1.2.   PSR ¶ 31.   The government concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b).   PSR ¶¶ 4, 37–38.   The defendant's total offense level of 21 and

criminal history category I yields an advisory Guidelines range of 37 to 46 months of imprisonment.   PSR ¶¶ 97–98.

## III.      Section 3553(a) Analysis

There is no question, in this case, that the defendant has had serious mental health issues in his adolescence and early adulthood.   The government concurs with the defense' request that the defendant be recommended for mental health services and counseling while he is incarcerated, as well as subsequently on supervised release.   ECF No. 37 at 5–6.

But his mental health issues did not prevent him from engaging in serious criminal conduct, namely: operating a successful darknet drug storefront from approximately April to November 2020.   The defendant was sophisticated enough to create a slick website, curate a customer base, print labels with fake senders, and maintain a steady supply of genuine pharmaceuticals for his customers—customers he obviously had reason to know were abusing his products.   It is true, as the defense points out, that the defendant did not "press" or "adulterate" his product.   ECF No. 37 at 4.   He didn't have to; the pills he sold, to customers across the country, were full-strength, pharmaceutical-grade prescription drugs.   By any measure, the defendant's offense is serious.

The seriousness of the offense is reflected in the nature of the substances he distributed alone.   Oxymorphone and oxycodone are potent Schedule II synthetic opioids with high rates of abuse that have the potential to destroy families, homes, and communities.   93,331 drug overdose deaths occurred in the United States in 2020, 60,710 of which involved opioids.[1]   Adderall and Vyvanse, both types of amphetamines that the defendant sold, are Schedule II stimulants with

---

[1] N.Y. Times, "*Drug overdose deaths soared to a record 93,000 last year*," *available at* https://www.washingtonpost.com/health/2021/07/14/drug-overdoses-pandemic-2020/ (last visited Aug. 17, 2021).

similarly high rates of abuse.   Schedule II controlled substances are "considered dangerous" and have "a high potential for abuse, with use potentially leading to severe psychological or physical dependence."[2]   The defendant's actions risked the lives of anyone who purchased these highly addictive and potentially lethal drugs.   It is clear this defendant had a cavalier attitude toward the individuals to whom he was peddling highly addictive substances as well as to the harm he was causing society, and therefore a significant term of imprisonment is appropriate.   That cavalier attitude is all the more apparent in light of the fact that the defendant worked as a trained pharmacy technician for 19 months.   PSR ¶ 88.

With respect to the defendant's work and education history, it is clear that he—unlike many defendants who engage in drug trafficking—had ample opportunity to pursue legitimate ends. He graduated from high school with a 3.7 GPA.   PSR ¶ 84.   He worked as an account representative with a local State Farm Insurance until shortly before he was arrested in connection with this case.   PSR ¶ 86.   Though it seems he did not have a perfect childhood, he is neither impoverished nor uneducated.   To the contrary, it seems his only motivation here was to make money, which is in line with the "goals" he wrote on the whiteboard at the State Farm office, along with his desire to kill his ex-girlfriend's dog:

---

[2] United States Drug Enforcement Administration, *Drug Scheduling*, *available at* https://www.dea.gov/drug-scheduling.



The chilling details of the threats case of which that image is a part are set forth in the PSR in paragraph 45.   Though the threats case is separate from the conduct for which the defendant is being sentenced now, it is appropriate for the Court to consider the defendant's overall danger to the community when fashioning the sentence.   It is in part for this reason that the government submits that a guidelines sentence is appropriate in this case despite the fact that the defendant has no other criminal history.

Of course, the government is also mindful of the need to avoid unwarranted sentencing disparities between defendants.   Though this defendant is not charged in a conspiracy and has no co-defendants for a direct comparison, the Court has presided over several darknet drug cases, the following which are just two examples:

1. *United States v. Hon Lam Luk* (1:20-cr-24), *Son Hoang Nguyen* (1:20-cr-155), and *Dat Quoc Nguyen* (1:20-cr-265):   These three defendants were part of a conspiracy to distribute pressed pills containing methamphetamine through their darknet vendor page "addy4cheap."   Each of these defendants were sentenced to 46 months' imprisonment.

9

2. *United States v. Al Pagan* (1:21-cr-95): This defendant sold various types of prescription drugs, along with counterfeit currency, on his darknet vendor page "H00k3d"; he was sentenced to 36 months' imprisonment.

Based on the foregoing cases, a guidelines sentence of 42 months for this defendant would be consistent with sentences the Court has imposed for similar conduct, and will send a message of deterrence to other individuals who might be tempted to push pills on the darknet.

## CONCLUSION

For the reasons stated herein, the United States submits that a guidelines sentence of 42 months' imprisonment is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:  _____/s/_____
Katherine E. Rumbaugh
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case; and I will further forward an electronic copy to the U.S. Probation Officer assigned to the case.


_____/s/_____
Katherine E. Rumbaugh
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:   703-299-3700
Fax: 703-299-3982
Email: katherine.rumbaugh@usdoj.gov

11